Case number 10-1890 Executive Property Management v. Gregory Watson All right, counsel, if you'll allow for Mr. Watson, you can step forward.  I am William Drew, and I represent the appellant, Gregory Watson, and may it please the Court. Let me ask you, were you given a different time than 10 o'clock? No, I checked in. I was here quite early, and I saw that we were number four on the list, so I asked if – Oh, I'm sorry. I didn't follow the right list. I thought you were number two.  My apologies, though. As far as the appeal, Your Honors, this case simply has to do with a landlord trying to enforce a contract against a guarantor. We understand the case, and, of course, we've read the briefs, but let's focus on the claim of impossibility that you believe was made out here. But impossibility tends to be more than it's too hard to do or there's medical support for the residents no longer being a good place for someone to reside. Why is impossibility – why was impossibility made out here? Well, that's correct, Your Honor. As you stated, it's not an impossibility to pay the rent, which was the obligation of the tenant under the agreement, and it wasn't – Well, what does impossibility mean in our case? What it means is that the very bargain, the thing that was bargained for under the contract, is no longer – is eliminated, or it's impossible for that bargain to go to, in this case, the tenant. Was it impossible in this case? It was. Why was it impossible? Well, logically, what happened is when the lease was entered into, the family – We understand the circumstances of what existed before the lease was entered into. We understand those. Why was it impossible to fulfill the lease? Well, what happened was the medical complex child and the severity of those medical problems of the child, which, you know, the trial court addressed as not amounting to an affirmative defense, but it's more than that. It was the determination by the University of Chicago, Illinois, and the Division of Child Services that wrote a letter, which is part of the evidence, that stated that the studio apartment, the subject's studio apartment, was unsuitable for the child – When was that letter written? The letter was written – I believe it was written in 2010. Yeah. What – How far into the lease? Well, the lease went from October of 2008 through September of 2009. Okay. So the letter's coming after the fact? Well, I think the letter just verifies that, in fact, there was a home study, an assessment that was done in January of 2009, shortly before the tenants vacated. Yeah. So that letter comes out a year later? That's correct. The letter came out, but it's verifying the fact that the assessment – wasn't this communicated early on and then not even result in this situation? Well, the facts were stipulated to here, and it may have been communicated, but the facts were stipulated that, you know, he had a medical severity and that the apartment was unsuitable. So it may have been communicated. Okay. So we have a stipulation that the apartment was unsuitable and that he had a medical condition? That's correct. I mean, we're supposed to decide this case based on your stipulation, not to add facts to your stipulation. Is that correct? Right. I mean, the matter was based upon – it was ruled on by the trial court based upon stipulated facts. One of the concerns we have is when we rule on a case – if we were to rule on your case in a manner consistent with your position, we might run across another case that's similar, and the question is, what do we do in that situation? And do we say that that is impossible as well? What if an individual who – what if the medical condition wasn't the son but was his own? Would he have a right to break the lease and say, yeah, my medical condition doesn't allow me to live here anymore? Or what if he's a veteran called – national guardsman or person who's called into duty and won't be able to be there or reside there anymore? Do we allow leases to be broken in that sense too, or we call those impossible situations? Well, not at all. I think this is an extraordinary case. Why is this case extraordinary? What makes it extraordinary? Well, it's – Other than the youth – I mean, the age of the individual. I think it's extraordinary because of the fact that any child born with medical severe problems like this, that's a unique circumstance alone. And then you had a reputable medical facility that inspected the studio apartment after the parents had to get special training just for this child to go home with them. I mean, you have to look at – I mean, those are all extraordinary circumstances to not have your child be able – I think the facts are clearly extraordinary. What I don't understand is any – and maybe stipulated facts are stipulated facts. But what I don't understand is no communication whatsoever. Why did this even get to this point? And I'm going to ask you right now, have the parties even attempted to settle this case? The judgment entered was $4,000 plus $800 in attorney's fees. We did attempt to settle it. I attempted to settle it from the very beginning, sure. And I appreciate all that. And I think that as far as the communications that occurred, even if the communications were made at the time that everything occurred, they still have an impossibility of performance. And that's what I was going to get to because we can almost stipulate that the facts here are extraordinary. But does extraordinary mean impossible? In this case, yes. I'd say, like the cases I cited, which are all very interesting cases, maybe – and I emphasize maybe – of a greater magnitude because the principal law has to be the principal law. What's your strongest case that supports you? Well, I think the strongest case might be – well, all of them. I think they're all – Pick one. Pick one? Well, I think the strongest case probably is the one involving the ship captain. You know, the U.S. Supreme Court, Oliver Wendell Holmes, where the command of the ship captain was, return to where you departed from. Don't go to your destination because World War I was breaking out. And you know what? As much as, you know, there's an importance of doing the commercial duty and obligation of getting the gold to the destination point, you know, the welfare of those people and everybody, you know, it's incumbent that the event that was occurring makes the performance impossible. Was that an impossibility case? Or was that simply a case where executive powers took control or declaration of war supersedes everything else? Sure. Yes, Your Honor. I mean, it's an impossibility case because, again, he could have gone. The captain could have gone, and he may have made it. But that case was analyzed as a contractual case, a commercial case. And I think, you know, public policy and the law always has to look at the human side of it. And so I think that case kind of says it all. All right. We'll give you a few minutes for rebuttal. Thank you. Thank you. You're welcome. Good morning. Good morning. Charles Ryan appearing on behalf of the plaintiff. I'm sorry, your last name? Charles Ryan, R-Y-A-N. May it please the Court. A couple things. One of the things I'd like to clear up from the defendant's statement just a moment ago, there was no stipulation. The only stipulations are what is set forth in the record in the Court's order that was entered in this case on June 2nd of 2010. Are you saying that there was no stipulation that it was medically unsuitable? There is no such stipulation. The only facts in the record are those three letters that are attached to the records, pages 39, 40, and 41. But the trial court was, and we are free to infer any facts from those stipulated facts? Well, in regard to those letters, one of those letters showed that there was not enough wattage and voltage in the electrical system to take care of the devices that were needed to care for this child. That was one of the letters that did indicate, based upon a review by the agency that provided it. So the kid couldn't live there under those circumstances if there's not proper voltage or wattage in the system. The second was that there wasn't even enough room in this apartment for the equipment that would be needed to maintain that child. One of the things, and that's a good point, I think the record does show that as far as the letters are concerned. However, what these letters, if the court reviews these letters, they show what is the optimum method for this child's treatment. And it does not necessarily mean it's just a CES method. So you're telling me that a sick child shouldn't have optimum care? Is that what you're telling me? I believe every child is entitled to the best care that they should be entitled to. Do you have children? I do. Would you want your children to have the optimum care or something less? I absolutely would. So don't talk about giving less than optimum care. No child should receive less than optimum care. But the question is whether or not that optimum care falls into this impossibility analysis. And I'm not aware of any case that says that impossibility is in any way connected to optimum care or best care or any care at all. It's a question of whether or not it can. Let's go on to another question regarding can the tenant and the person that signed as the insurer or auditor. Guarantor. Guarantor. Can we separate the two of them and say that, sure, we understand why the tenant had to leave, but the guarantor has an obligation to fulfill the lease or at least mitigate the damages in the event that the tenant has to move out? Why should the guarantor be allowed under that same umbrella that the tenant wishes to raise? Wouldn't that be because the law puts the guarantor in the same position? Steps into the shoes of the tenant. Actually, if you look at the lease that was signed in this particular case, when you say steps into the shoes of the tenant, does the guarantor step into the shoes that only if we find that it was impossible, if we find that it was extraordinarily and very close to impossible, but we say, you know, somebody could have fulfilled this, can't we say that the guarantor should have been the one to fulfill it? Possibly. The guarantor and or the tenants. One of the premises here. What was your position? Your position was that neither or both were obligated. Both were obligated. Both signed the lease. The guarantor was obligated, and that was actually stipulated to in the court's order by the parties, if you look at the order that was entered that's been appealed from. So it was our position, and I think it was already agreed by the parties, that the guarantor would also be able to raise the same defenses. When did your client become aware that they had vacated the lease, and how? That was one of the issues, and that's a good point. They weren't aware until much later. They left, I believe, the record states in February. I can only tell you from coming in this case later, I didn't try this case, my client wasn't aware until well after that time that they had vacated. Well, the lease was going to end in October, right? Correct. You don't know from your own review of the record when your client eventually became aware that they had vacated? When did they stop paying rent? I believe the record states they stopped paying rent in February, and then they became aware of that sometime after February after they vacated. I do not know the exact date. The counsel said that there was an effort to settle this. Was the judgment amount, is it correctly stated, $4,000 plus $800 in attorney's fees? That is what the award says. All right. In this case, the parties haven't made any single effort, or have they made an effort? I reviewed the file. I can't tell you anything. The only thing I can tell you that's outside the record might be what was in the file from the trial. But since you've been involved in the case, there hasn't been any effort? We discussed it, but there was no offers made, if that's what Your Honor is asking. All right. What are the elements of impossibility that weren't satisfied here? I want to explain a couple things. We know the general rule. The general rule of law is that regardless of the subsequent events, even though they may be unfortunate or create an impossibility, you're still obligated to perform on an unqualified contract. This was an unqualified contract. And what the case law says, the Supreme Court cases, the Diebler case and the Leonard case, which are lease cases, which are applicable to this situation, unlike the cases cited by counsel. The Arthur Murray dance cases? Those were not? Those were person service contracts. They were not lease cases. Okay. So tell us about the lease cases. Well, the lease cases here, they look at two issues. There's two doctrines. There's the impossibility of performance doctrine, which was classed by the defendant in the underlying case trial court, which was denied. There's the other one that's called the frustration doctrine, which is also. Isn't this a frustration classic case? This may be a frustration case, yes. A couple have a baby. The baby's born in October. They don't know that they're going to have all these medical difficulties. They suddenly realize that they are. There's absolutely no question that forgetting impossibility, talking about frustration, how are they supposed to get the benefit of the bargain of their lease with their newborn baby that they cannot possibly care for in this apartment? Well, that's exactly what the cases talk about. The cases say that for the frustration doctrine to apply, when there's an unqualified contract like this, they can strew the lease or the contract in question. And in this case, there are no exceptions. All the cases say, all the Supreme Court cases say, is if they enter into this contract and it's something that could be anticipated, which though this may not be expected, it may not be probable, it is something that can be anticipated. Who would ever anticipate this? Probably not. Who would ever anticipate that the birth of a child would suddenly, the child would have all of these medical conditions that made it impossible for them to live in this apartment and care even at an adequate level for this child? I agree that it's something that probably is not likely. And whether, and as our position, it may be anticipated. And that's all the cases say. Or the cases say either anticipated or they should have contracted against the provision. They have not done this. What control do they have over contracting against this when everybody knows that the landlord is the one that provides the lease? People don't negotiate these foreign contracts. They never have. That's a good point. And I can tell you from looking at this lease, if you look at page one of the lease, it's very general. It's to be used for all lawful purposes. The attached writer of the lease deals with the occupancy provisions. It's part of the record. It's the first paragraph. That's the lease on all leases that says how many occupants and who they are and who can reside. It says two adults, one child. It has additional language. This would have to be specific to this lease because you might have different occupants or make-ups. This says with the addition, except for any after-born children. They had the, and to me that would be a reasonable inference. But they negotiated that provision. There were two children eventually? Well, maybe they perceived there might be twins. Maybe they perceived there might be an after-born child. This was a studio. Yes, and we don't know the condition. There's nothing in the record that tells about the condition of the pregnancy. They don't know. They may have well known this was going to be a problem. Does it seem unusual or unfair to suggest that if you break your legs, you're relieved of the responsibility, or was that a rescission case, of paying on this dance contract? That's acceptable in the eyes of the law, but if your child is born with enormous medical conditions that parties seem to agree or stipulate it to that could not be cared for in this residence, why should the leasehold be so much superior to a contract for dance lessons? Well, it's the way that they came down. These are personal service contracts in most cases. Actually, one of the cases, there was the Parker case, and the other was the Davies case. I've got the two mixed because they're cases cited by counsel. One of the cases, they actually at both levels denied the request based upon the circumstances. So it's not a given in each situation whether it's the inability for… Well, which one did they allow? Wasn't it the broken legs? The debilitating car accident? It may have been the other one. Did that excuse the… Under those circumstances of that case. However, I do believe that what's relevant here in the Supreme Court cases is even though Your Honor brings up a good point, they did, if there would be a reasonable inference, they did negotiate the extra provision about the extra children. Why they couldn't have negotiated a contingency that would have provided for an out in the event of inability to reside there. I just don't think people would ever even consider that. I mean, that's not something they would even think of negotiating. No one is expecting to have a child have anything wrong with it when they're born. They wouldn't be negotiating these kinds of things. It's like, I don't know, I just don't understand that. I don't understand how we can recognize an exception, allow a rescission for the terrible accident that doesn't allow you to perform on a dance contract, and yet the rent. Well, in any event, in this particular case, one of the problems here also is the record on appeal. There is no bystander's report. There's no reported proceedings. There's no agreed statement of facts. One of the things we pointed out in our brief was, based upon the Webster Supreme Court case cited, is that I know this Court will make its own determination that it's presumed that the trial court's decision was appropriate. So the trial testimony is not in the record? No. Most of the cases, a good bit was stipulations, but they had to consider, if you look at the order, it says it considered the arguments of counsel, the exhibits, the facts, the evidence. Aren't they arguing a de novo standard of report? They are. And you do not agree? No. Well, we had said it was a manifest weight argument. Yes. And we also, in reliance upon the Webster decision, would say that there's a good argument that those facts should be presumed with the lack of a record. But you didn't put that in your brief, did you? No, I cited the case, though. What case did you cite in your brief? The Webster case. It does say that. It is in your brief? Yes. Webster stands for the proposition that typically when there's issues of fact to be resolved with a manifest weight, our standard is the proper one. Okay. But, no, I'm talking about, does Webster say failure to include a record or transcript of proceedings or bystander's report under the, did you cite a case, does Webster say that? Yes, that case is included in the citation. But you didn't argue that we should presume the trial court did the right thing or did not abuse its discretion, I should say, in entering the finding. It was only cited as to the manifest weight. Yes, I didn't recall that. All right. All right, well, thank you very much. Very briefly, Counsel. Yes, thank you very much. As far as the standard review, we believe it's de novo. I was the trial court attorney. We came before the judge. The facts were stipulated to, and the judge was going to rule. Are you saying all the facts were stipulated? They were all stipulated to. No testimony? No testimony. None whatsoever. The judge asked if you wanted to make, the trial judge wanted to make a ruling there or to brief it, and I asked that we brief it, and it was briefed. And the stipulations are in the record? The stipulations are, the judge also drafted the trial court order, which states that the stipulations were made regarding the facts of the case. And that's in the record? In the trial court order, yes. What distinguishes or what determines which standard of review should apply oftentimes is, it can be confusing, but the Supreme Court has said that if the trial fact has exercised any discretion, then a standard of review must reflect that deference to that trial fact. Do you think the trial judge in this instance exercised any judgment in making his decision? I don't think so, in my mind. Do you think he was compelled to enter the judgment he entered by virtue of these facts that were stipulated to him? I think he ruled as a matter of law. I think he ruled as a matter of law. That's how I think he ruled, and that's how. Do you think he was compelled to enter the judgment he entered by law? That was his decision. No, no. Do you think he would have decided, had he had any flexibility, he could have decided in your favor? Could he have decided in your favor? He certainly could have. If I may, lastly, I just would like to say probably the best illustration or one of the best illustrations of impossibility of performance or frustration is a fictional play written by William Shakespeare, and it's The Merchant of Venice. To me, that's been a long-lasting, Shakespeare's lived forever. That play is a case. Within the entire play, it's a case of a commercial contract whereby the commercial merchant is trying to exact a pound of flesh out of the person he contracted with because he can't come up with the money. The judge in that case, who happened to be a female, Portia, who was dressed like a male back in that days, to get her points across, she basically was able to cross-examine the merchant to the point that he realized that it wouldn't be a fair contract to exact a pound of flesh. One of the great quotes out of there is about mercy that comes from The Merchant of Venice. I'm not going to read this whole thing, but it starts out that the quality of mercy is not strained and goes on to say, it blesses him that gives and him that takes. It is mightiest in the mightiest. It becomes the throne monarch better than his crown. His scepter shows the force of temporal power, the attribute of awe and majesty. Wherein does sit the dread and fear of kings, but mercy is above the sceptered sway. It is enthroned in the hearts of kings and it is an attribute to God himself. And then it finally states, an earthly power doth then show like as gods when mercy seasons justice. And that's kind of the point we're making with this case. And I assume you made that point before the trial. No, I did not. But I kind of thought of it afterwards. All right. All right. If you could wrap it up, Mr. Ryan. Yes. Thank you very much, your honors, for this opportunity to plead the appeal in front of you. And we would ask that the decision of the trial court be reversed under the circumstances. All right. Thank you very much. The case will be taken under five.